IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| BRADLEY MANDELA HOUSTON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 5:23-CV-20-TES-MSH |
| | : | |
| Unit Manager MELISSA LAWSON, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER AND RECOMMENDATION

Pending before the Court is Defendants Lawson and O'Neal's motion to dismiss (ECF No. 37) Plaintiff Bradley Mandela Houston's amended complaint (ECF No. 33). Also pending are Houston's motion for preliminary injunction (ECF No. 29), motion for order to show cause (ECF No. 36), third motion to amend his complaint (ECF No. 41), and fourth motion to amend his complaint (ECF No. 45).[1] For the reasons stated below, it is recommended that Defendants' motion to dismiss be granted and Houston's motions for preliminary injunction and for an order to show cause be denied as moot. Houston's motions to amend are denied.

## BACKGROUND

Houston's claims arise from two confrontations he had with his cellmate, Jesstin Howard, between January 11 and January 12, 2023, at Wilcox State Prison ("WSP"). Am.

---

[1] Houston also recently filed a motion to proceed *in forma pauperis* ("IFP") (ECF No. 45). Houston has already been granted IFP status, so this motion is **DENIED AS MOOT**.

Compl. 3, ECF No. 33.  Houston alleges he had fought with Howard in Unit J, Cell #241, and asked to be moved.  *Id.*  Lawson, who was the unit manager, moved Houston to another unit, but when he attempted to gain entry, the inmates in the other unit would not allow him inside.  *Id.*  When he returned to Unit J and told Lawson he had not been allowed in the other unit, she told him to return to Cell #241 with Howard.  *Id.*  On January 11, 2023, Howard attacked Houston and stole his custom-made Bible.  *Id.*  When O'Neal came by to sign the door chart, Howard and Houston both informed her of the fight, but she said she had no authority to move inmates.  *Id.*  Lawson was also aware of the fight, but she too refused to move Houston or Howard.  Am. Compl. 3.  Houston and Howard then fought for a second time.  *Id.*  Houston states on January 12, 2023, "two Spanish guys got into a fight," and Lawson and O'Neal moved one of those inmates into a separate cell immediately.  *Id.*  Houston claims Lawson and O'Neal displayed deliberate indifference and failed to protect him by not moving him out of a cell as they did with on one of the "Spanish" inmates.  *Id.*

The Court received Houston's original complaint on January 19, 2023 (ECF No. 1).[2]  He filed a motion to amend his complaint—discussed below—which the Court granted in an order allowing his failure to protect claim against Lawson, O'Neal, and a

---

[2] Although the Court received the original complaint on January 19, 2023, Houston signed it on January 15, 2023.  Compl. 7, ECF No. 1.  "Under the prison mailbox rule, a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."  *United States v. Glover*, 686 F.3d 1203, 1205 (11th Cir. 2012) (internal quotation marks omitted).  "Unless there is evidence to the contrary, like prison logs or other records, we assume that a prisoner's motion was delivered to prison authorities on the day he signed it."  *Id.*

2

third defendant—Wright—to proceed for further factual development (ECF Nos. 6, 8).[3] On June 13, 2023, Lawson and O'Neal moved to dismiss Houston's complaint (ECF No. 21).[4]  Houston responded to the motion to dismiss and afterward filed an amended complaint (ECF Nos. 30, 33).  Defendants moved to dismiss the amended complaint on July 14, 2023 (ECF No. 37).  Houston did not respond to the motion but did file a third and fourth motion to amend his complaint (ECF Nos. 41, 44).  These motions are ripe for review.

## DISCUSSION

### I.   Plaintiff's Motions to Amend

Prior to addressing Defendants' motion to dismiss, the Court will consider Houston's third and fourth motions to amend (ECF Nos. 41, 44).  Some further background on Houston's amendments and attempts to amend his complaint is necessary.  In Houston's original complaint, he included "Tactical Member Wright" as a defendant on his failure to protect claim arising out of the January 2023 altercations with his cellmate.  Compl. 5. Houston alleged after the second fight with Howard, Wright—like Lawson and O'Neal— refused to move him to another cell.  Compl. 5.  Houston's original complaint also included a First Amendment retaliation claim against Wright, alleging Wright refused to move him

---

[3] In his original complaint, Houston identified O'Neal as "Lt. Williams/O'Neal," which the Court mistakenly interpreted as referring to two different people.  Compl. 5.  Defendants clarify "Williams" is O'Neal's previous surname.  Defs.' Br. in Supp. of Mot. to Dismiss 1 n.1, ECF No. 37-1.  Therefore, the Clerk is **DIRECTED** to terminate "Lieutenant Williams" as a separate defendant in this case.

[4] The Court recommends this motion (ECF No. 21) be **DENIED AS MOOT**.

3

because he had previously filed grievances and a lawsuit against him. Compl. 6.

On March 10, 2023, the Court received a document from Houston captioned as a "Motion to Amend." Pl.'s 1st Mot. to Amend 1, ECF No. 6. The motion did not attach a proposed amended complaint but instead described three claims and two defendants he wished to add. The first claim was a First Amendment retaliation claim against Unit Manager Alicia Ward for placing him in a cell with an inmate who then assaulted him. *Id.* at 2. This incident occurred in September 2022, and Houston claimed it was in retaliation for him filing grievances against her. *Id.* The second claim alleged on June 18, 2022, Evon Walker—a food service worker at WSP—would not allow him to work his kitchen detail, apparently in retaliation for Houston calling "PREA" about sexual harassment. *Id.* The third claim Houston sought to add was a First Amendment retaliation claim against Lawson, alleging her refusal to move him out of a cell with Howard was in retaliation for his filing grievances against her. *Id.* at 3.

On March 28, 2023, as part of its preliminary screening of Houston's claims, the Court granted Houston's motion to amend but recommended dismissal of Houston's retaliation claims against Lawson and Wright because Houston failed to show a causal connection between his grievances and the alleged adverse actions. Order & R. 9-11, ECF No. 8. The Court also recommended dismissal of the retaliation claims against Ward and Walker because they had no logical relationship to the claims arising from the January 2023 incidents. *Id.* at 11-12. The Court allowed his failure to protect claim against Lawson, O'Neal, and Wright to proceed for further factual development. *Id.* at 12. The Court's recommendations were adopted by the district judge on April 24, 2023. Order 1-

4

2, ECF No. 17.

On June 13, 2023, Defendants Lawson and O'Neal filed a motion to dismiss Houston's complaint (ECF No. 21). The motion did not mention Houston's motion to amend, which is understandable considering none of the added claims were allowed to proceed past preliminary review. Houston responded to the motion to dismiss within twenty-one days, but he also filed an amended complaint (ECF Nos. 30, 33). The amended complaint reasserted Houston's failure to protect claim related to the January 2023 incidents but omitted mention of Wright. Am. Compl. 3. Because Houston's previous motion to amend was granted, his amended complaint arguably should have been treated as a second motion to amend requiring the parties' consent or leave of Court. *See* Fed. R. Civ. P. 15(a). Defendants, however, filed a motion to dismiss Houston's amended complaint, treating it as the operative complaint and contending it superseded the original complaint. Defs.' Br. in Supp. of Mot. to Dismiss 2, ECF No. 37-1. Therefore, because Defendants have not objected to the amended complaint, the Court will—to the extent it is necessary—grant Houston's second motion to amend.

As recognized by Defendants Lawson and O'Neal, Houston's amended complaint (ECF No. 33) superseded the original complaint and became the operative complaint. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint."). As mentioned above, Houston's amended complaint omits any claim against Wright, and his third and fourth motions to amend also omit Wright (ECF Nos. 33, 41, 44). Therefore, the Court construes the omission as a request Wright be dropped as a party defendant in this action, which the

Court recommends be granted. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").[5]

Houston did not respond to Defendants' motion to dismiss his amended complaint, but he did file a third motion to amend his complaint (ECF No. 41). Again, the motion to amend does not attach a proposed amended complaint but only sets forth the claim and defendants Houston wishes to add. 3rd Mot. Amend 1-2, ECF No. 41. Houston alleges in September 2022, he was in his cell at WSP when he asked Captain King to move him to another cell because his cellmate had injured him. *Id.* at 1. King ignored him despite Houston showing him his injuries, and moments later, the inmate stabbed Houston in the neck and arm. *Id.* Later, Lieutenant Krause came by, and Houston's cellmate told him to remove Houston from the cell. *Id.* Despite seeing Houston "tied up on [his] knees and [] the inmate kicking [him] in the head," Krause refused to move Houston for another ten minutes. *Id.* Houston was then transported to the hospital for treatment. *Id.* Houston wants to add King and Krause as defendants. 3rd Mot. to Amend 2.

On August 8, 2023, the Court received a proposed amended complaint from Houston, which the Court will treat as his fourth motion to amend (ECF No. 44). In this proposed amended complaint, Houston again asserts a claim against King and Krause related to the September 2022 incident. 4th Mot. to Amend 5, ECF No. 44. He also seeks

---

[5] It is not clear Houston can voluntarily dismiss Wright at this stage without Court approval. *Compare Pedrina v. Chun*, 987 F.2d 608, 609-10 (9th Cir. 1993) (finding Fed. R. Civ. P. 41(a)(1) allows a plaintiff to voluntarily dismiss fewer than all defendants if the defendants being dismissed have not served an answer), *with McCrimager v. Roberson*, No. 4:18-cv-179-WS/MJF, 2019 WL 4170190, at *1 (N.D. Fla. July 29, 2019) ("Rule 41 does not authorize the dismissal of merely a single party." (citing *Perry v. Schumacher Grp. of La.*, 891 F.3d 954, 958 (11th Cir. 2018))).

to add a First Amendment free exercise claim against Krause and Walker related to denial of a vegan meal on June 6, 2023. *Id.* at 6. Finally, he reasserts his failure to protect claim against Lawson and O'Neal related to the January 2023 incidents with Howard. *Id.* at 6-7.

Since Houston previously amended his complaint, any further amendment requires written consent of the opposing party or the Court's leave. Fed. R. Civ. P. 15(a). Defendants have not consented, so Plaintiff must obtain leave of the Court. A court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Further, because Houston's motions to amend seek to add parties, they are simultaneously governed by Rule 20(a)(2) of the Federal Rules of Civil Procedure, which addresses joinder of defendants. *See Exime v. E.W. Ventures, Inc.*, 250 F.R.D. 700, 700 (S.D. Fla. 2008) (noting that motion to amend to add a defendant is simultaneously governed by Rule 15(a) and Rule 20(a)). "A plaintiff seeking to join a putative defendant under Rule 20(a) must demonstrate: (1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and (2) some question of law or fact common to all persons seeking to be joined." *Id.* at 700-01 (citing Fed. R. Civ. P. 20(a)). In order for claims to arise from the same transaction or occurrence, they must bear a "logical relationship" to each other, which will be found to exist "if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim." *Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir.1985)).

Applying the above standards, Houston's motions to amend are denied. The new claims against the proposed additional defendants do not bear a logical relationship to the

7

claims against Lawson and O'Neal. They involve different defendants, different inmates, and conduct occurring at different times, including one incident occurring after Houston filed the instant lawsuit. If Houston wishes to assert claims related to these matters, he should do so in a separate § 1983 action.

## II.   Defendants' Motion to Dismiss

Defendants move to dismiss, arguing, *inter alia*, Houston failed to exhaust his administrative remedies. Def's. Br. in Supp. of Mot. to Dismiss 3-11. Because the Court finds Houston did not exhaust his administrative remedies, it recommends granting Defendants' motion and declines to address their other grounds for dismissal.

### A.   Exhaustion Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). When a grievance procedure is provided for prisoners, "an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process. If their initial grievance is denied, prisoners must then file a timely appeal." *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (internal citation and quotation marks omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because

8

no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally." *Toenniges v. Ga. Dep't of Corr.*, 600 F. App'x 645, 649 (11th Cir. 2015) (per curiam).

The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss. *Bryant*, 530 F.3d at 1375 ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]"). Further, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings. *Id.* at 1376. "[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.* If, taking the plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.* In resolving the

9

factual dispute, a court is authorized to make credibility determinations. *See Bryant*, 530 F.3d at 1377-78 (finding district court did not clearly err in determining plaintiff's allegation that he was denied access to grievance forms was not credible); *see also Whatley v. Smith*, 898 F.3d 1072, 1082-83 (11th Cir. 2018) (upholding district court finding that one of inmate's grievances was not filed).

A prisoner need only exhaust administrative remedies that are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016). In *Ross*, the Supreme Court held that an administrative procedure is unavailable under the PLRA when either (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[,]" (2) it is "so opaque that it becomes, practically speaking, incapable of use[,]" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44. For a remedy to be available, it "must be capable of use for the accomplishment of its purpose." *Turner*, 541 F.3d at 1084 (quotation marks omitted). The burden is on the defendant to show that an administrative remedy is available, but "once that burden has been met, the burden of going forward shifts to the plaintiff, who . . . must demonstrate that the grievance procedure was subjectively and objectively unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020) (internal quotation marks omitted) (citing *Turner*, 541 F.3d at 1085). District courts must use the two-step *Turner* analysis when addressing the availability of the grievance process. *See Jenkins v. Sloan*, 826 F. App'x 833, 839 (11th Cir. 2020) (per curiam) (directing district courts to apply "the two-step *Turner* test when addressing the question of exhaustion and the *availability* of the grievance

10

process").

      B.      <u>WSP Administrative Procedures</u>

Defendants have submitted the affidavit of Jennifer Wilson, the Chief Counselor at WSP, to establish administrative remedies were available to Houston at WSP. Wilson Decl. ¶ 2, ECF No. 37-2. Wilson's responsibilities include overseeing the grievance process at WSP and acting as custodian of institutional grievance records. *Id*. According to Wilson, WSP follows the Georgia Department of Corrections ("GDC") Standard Operating Procedures ("SOPs") regarding grievances. Wilson Decl. ¶ 3.

The SOPs mandate that an inmate must follow a two-step process in order to exhaust his remedies: (1) file an original grievance no later than ten days from the date the inmate knew or should have known of the facts giving rise to the grievance; and (2) file an appeal to the Central Office. Wilson Decl. Attachs. 19, ECF No. 37-2.[6] The warden has forty calendar days within which to respond to an original grievance, though a one-time ten-day extension may be granted. *Id.* at 22. An inmate may file an appeal within seven days after the warden issues a decision or after the time allowed for the warden to decide expires. *Id.* at 25. The Commissioner has one hundred and twenty days within which to respond to a grievance appeal. *Id.* at 26. With certain exceptions not applicable here, an inmate "may file a grievance about any condition, policy, procedure, or action or lack thereof that personally affects the [inmate]." *Id.* at 15.

---

[6] Because Wilson's declaration and exhibits were filed together as one document instead of separate attachments, the Court cites to Wilson's exhibits by using the document number and electronic screen page number shown at the top of each page by the Court's CM/ECF software as opposed to any other page number that may appear on the exhibits.

C.  Plaintiff's Grievances

According to Wilson, Houston filed eight grievances at WSP from his arrival at the facility on January 25, 2022, until June 7, 2023. Wilson Decl. ¶¶ 15-17; Wilson Decl. Attachs. 32, 35. Only one of these grievances is related to the claims in this case. On February 3, 2023, Houston submitted Grievance No. 348963, complaining Lawson and O'Neal refused to move him to another cell despite knowing Houston and his cellmate had a fight on January 11, 2023. Wilson Decl. Attachs. 68. On January 12, 2023, Houston and his cellmate had another fight, resulting in Houston being "choked." *Id.* Houston claimed Lawson and O'Neal failed to protect him by not moving him prior to the second fight. *Id.* At the top of the grievance form, Houston wrote the grievance was related to the present district court case. *Id.* The warden denied the grievance on March 2, 2023, citing a lack of evidence. *Id.* at 73. Houston did not appeal the grievance denial. Wilson Decl. ¶ 24.

D.  Analysis

Defendants argue Houston failed to exhaust his administrative remedies because he did not complete the grievance process prior to filing suit. Defs.' Br. in Supp. of Mot. to Dismiss 6-8. As noted above, Houston did not respond to Defendants' motion to dismiss his amended complaint. However, in response to Defendants' motion to dismiss his original complaint, he did not contend he exhausted his administrative remedies but instead claimed they were unavailable. Pl.'s Resp. to Mot. to Dismiss 1, ECF No. 30. Houston clearly did not exhaust his administrative remedies. He filed his complaint on January 15, 2023, and admitted therein he had not yet filed a grievance because a counselor had not "come by yet." Compl. 4, 7. He did not file his grievance until February 3, 2023. Wilson

12

Decl. Attachs. 68. Moreover, Houston did not complete the administrative process by appealing the grievance denial. Wilson Decl. ¶ 24.

Because Houston did not exhaust his administrative remedies prior to filing suit as required by the PLRA, the Court will consider his contention they were unavailable. In response to Defendants' motion to dismiss his original complaint, Houston alleged two grounds of unavailability. First, he argued the warden's March 2, 2023, grievance denial was "not introduced" to him until June 16, 2023, presumably when he received Defendants' motion to dismiss. Pl.'s Resp. to Mot. to Dismiss 1. Although not explicitly stated—and construing his argument very liberally—Houston apparently contends the administrative remedy was unavailable because he did not receive the warden's response and thus, was unable to appeal. Second, Houston argues an administrative remedy was unavailable because he was unable to obtain a grievance form while he was in Unit J and could not file a grievance until February 3, 2023, after he was moved to a different unit. Pl.'s Resp. to Mot. to Dismiss 2. He states while he was in in Unit J, "no staff member or officer would give me one upon request." *Id.*

Assuming Houston's contentions are sufficient to satisfy step one of the *Turner* analysis, the Court nevertheless finds Houston has failed to show administrative remedies were unavailable under step two. Regarding his contention he never received the warden's response, according to the documents submitted by Defendants, Houston came to the counselor's office on March 9, 2023, to receive the response but refused to sign an acknowledgement of receipt. Wilson Decl. Attachs. 73. Houston does not directly address this contention, but he instead vaguely asserts the document was "not introduced" to him

13

until June 16, 2023, and cites the SOP requirement that an offender must sign acknowledgment of receipt of the grievance. Pl.'s Resp. to Mot. to Dismiss 1-2. The Court finds Houston's contention he did not receive the response not credible.[7] Moreover, even if he did not receive a response, the SOPs allowed him to file an appeal after the time for the warden to respond expired. Wilson Decl. Attachs. 25. Therefore, he could have appealed even if he did not receive the warden's response. Finally, Houston filed suit prior to filing a grievance, so he violated the PLRA exhaustion requirement prior to any grievance appeal period commencing.

As for Houston's allegation he could not obtain grievance forms while he was in J Unit, he filed suit a mere two to three days after his second altercation with his cellmate.[8] Compl. 7; Am. Compl. 3. Inability to obtain a grievance form for a few days does not render an administrative remedy unavailable. Defendants contest Houston's contention he could not obtain grievance forms while in Unit J—an administrative segregation unit—but even if Houston had difficulty obtaining a form, he was able to file a grievance after he moved to another unit. Wilson Decl. ¶¶ 29-30; Pl.'s Resp. to Mot. to Dismiss 2. Further, although Houston did not file his grievance within ten days of the incident as required by the SOPs, his grievance was not rejected for untimeliness but denied for lack of evidence. Wilson Decl. Attachs. 19, 73. Therefore, any delay in obtaining a grievance form did not prevent him for pursuing his administrative remedies. In conclusion, Houston fails to show

---

[7] Houston did not request an evidentiary hearing on Defendants' motion to dismiss.

[8] Houston has identified both January 12, 2023, and January 13, 2023, as the date of his second confrontation with his cellmate. Compl. 5; Am. Compl. 3; Pl.'s 4th Mot. to Amend 6.

WSP's grievance procedures were subjectively or objectively unavailable to him. Therefore, the Court recommends Defendants' motion to dismiss be granted because of Houston's failure to exhaust his administrative remedies.

## CONCLUSION

For the reasons explained above, it is recommended that Defendants' motion to dismiss (ECF No. 37) be **GRANTED**.[9]  Houston's third and fourth motions to amend (ECF Nos. 41, 44) are **DENIED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof.  Any objection should be no longer than TWENTY (20) PAGES in length.  See M.D. Ga. L.R. 7.4.  The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made.  All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however,

---

[9] In light of this recommendation, the Court also recommends Houston's motion for preliminary injunction (ECF No. 29) and motion for order to show cause (ECF No. 36) be **DENIED AS MOOT**.

the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 16th day of August, 2023.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE